**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**CAROL A. TINGLE,**

    **Plaintiff,**       **Case No. 2:09-cv-01159**
                **JUDGE GREGORY L. FROST**
  **v.**            **Magistrate Judge Mark Abel**

**ARBORS AT HILLIARD, et al.,**

    **Defendants.**

**<u>OPINION AND ORDER</u>**

This matter is before the Court for consideration of Defendants' motion for summary

judgment (ECF No. 18) and its memorandum in support (ECF No. 18-1), Plaintiff's

memorandum in opposition (ECF No. 24), and Defendants' reply memorandum (ECF No.25).

For the reasons that follow, this Court finds the motion well taken.

**I.  Background**

Plaintiff, Carol Tingle, was formerly employed as a registered nurse with Defendant

Arbors at Hilliard, a nursing home located in Hilliard, Ohio.  Arbors at Hilliard is a registered

trade name of Defendant Hilliard Care, LLC, a subsidiary of Defendant Extendicare Health

Services, Inc., the later of which are headquartered in Milwaukee, Wisconsin.  This Court will

refer to Defendants as "Arbors."

On June 27, 2008, a resident passed away at Arbors during Tingle's shift.  The parties

dispute the events that led to the Hilliard Police Department arriving to assess the resident's

death.  As a result of the circumstances surrounding the death, Arbors reported that Tingle's

actions constituted a Class II violation in a Disciplinary Action Report ("DAR") dated June 27, 2008 ("6-27-08 DAR").[1]  In the 6-27-08 DAR, Arbors indicated that Tingle failed to instruct another employee to conduct CPR on the resident and that Tingle had failed to notify the resident's physician.

In July 2008, the Ohio Department of Health ("ODH") investigated the June 2008 incident.  ODH met with numerous Arbors employees, including Tingle, to discuss the incident. During this investigation, a question arose as to whether the expiration date on Tingle's CPR certification card had been altered.  Arbors suspended Tingle pending further investigation. Arbors concluded its investigation and subsequently reinstated Tingle with back pay for the days missed during her suspension.  As a result of the suspension, however, Arbors had issued Tingle a DAR on July 24, 2008 ("7-24-08 DAR"), for a Class II violation for violating a rule in the employee handbook.  Tingle retained an attorney, who contacted Arbors to remove the 7-24-08 DAR from Tingle's employment file and Arbors agreed to remove that DAR from her file, not count it as progressive disciplinary action, and place the DAR in a sealed file.

On October 23, 2008, Arbors issued Tingle another DAR ("10-23-08 DAR") because she failed to follow a direct order from a supervisor, which is a Class III violation.  Arbors indicated in the DAR that Unit 2 Manager Deanna Collins had told Tingle to return an orientee at a certain point in time, but that Tingle had failed to direct the orientee properly.  Tingle asserted that Liessen Davis, Director of Nursing, permitted Tingle to keep the orientee.  According to Arbors Administrator Tammy Meyers, Arbors reduced the 10-23-08 DAR from a Class III violation to a

---

[1]  According to Arbor's Employment Handbook, employee violations are categorized as Class I through Class III violations.  The class increases based on the severity of the violation, with a Class III violation the most serious infraction.

Class II violation.

On March 31, 2009, Arbors issued Tingle her final DAR ("3-31-09 DAR"), which resulted from Tingle's improper documentation of information in a patient's medical record and a violation of a safety rule, both of which are Class II violations. Arbors noted in the DAR that Tingle had falsely indicated in a patient's treatment record that she had changed the patient's dressing, that she had left a syringe by a patient's bedside during her shift, and that she had left the medical cart unlocked. As a result of the 3-31-09 DAR, Meyers and Arbors Staff Development Coordinator Shauna Arnold met with Tingle to present her with the final DAR and to terminate her employment. Tingle argues that the 3-31-09 DAR was unwarranted and contained incorrect information. She contends that the time the syringe was found and who found it are questionable, that the medical cart involved was not under her control, and that she did not falsify the treatment records.

After Tingle's termination from Arbors, she filed with a charge with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC") in which she asserted age discrimination. The OCRC dismissed the charge and found no probable cause to conclude that Arbors had engaged in discriminatory practices. Tingle then filed a second charge with the OCRC and EEOC, again alleging that Arbors had discriminated against her because of her age. The OCRC again dismissed Tingle's charge, finding that there was no probable cause to believe that Arbors had engaged in discrimination.

Tingle subsequently filed suit in the Franklin County Court of Common Pleas, and Arbors removed the action to this Court in December 2009. (ECF No. 1.) After dropping several of her original claims, Tingle now asserts only a state law retaliatory discharge claim

under Ohio Revised Code §§ 3721.24(A) and 4112.02(I) in Count Three of her Complaint and a

federal retaliatory discharge claim under Title VII, 42 U.S.C. § 2000e-3(a) in Count Four.  (ECF

No. 2 ¶¶ 23, 24.)  Arbors has filed a motion for summary judgment, which is ripe for disposition.

(ECF No. 18.)

## II.  Standard Involved

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial

burden of presenting parts of the record which illustrate that no genuine issue of material fact

exists.  *Havensure, L.L.C., v. Prudential Ins. Co. of Am.*, 595 F.3d 312, 315 (6th Cir. 2010)

(citing *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389-90 (6th Cir. 2008); *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986)).  The Court may grant the motion if the nonmoving party fails

to establish a sufficient showing of the existence of a required element that the nonmoving party

has the burden of proving at trial.  *Novak v. MetroHealth Med. Ctr.,* 503 F.3d 572, 577 (6th Cir.

2007) (citing *Celotex Corp.*, 477 U.S. at 322).

The Court must view the factual evidence and draw reasonable inferences in a light most

favorable to the nonmoving party.  *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir.

2007) (citing *Thomas v. Cohen*, 453 F.3d 657, 660 (6th Cir. 2006)); *Ctr. for Bio-Ethical Reform*

*Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A nonmoving party relying on mere

allegations or denials of the moving party's pleadings is not sufficient; rather, the nonmoving

party must establish specific facts showing there is a genuine issue of material fact.  *Havensure*,

4

595 F.3d at 315 (citing *Moldowan v. City of Warren*, 578 F.3d 351, 354 (6th Cir. 2009)). A genuine issue of material fact exists if the outcome could be affected by a disputed fact or if the evidence is such that " 'a reasonable jury could return a verdict for the nonmoving party.' " *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Knox v. Neaton Auto Prods. Mfg. Inc.*, 375 F.3d 451, 456 (6th Cir. 2004) (quoting *Anderson*, 477 U.S. at 251-52).

### III. Discussion

#### A. Retaliation related to Age Discrimination

##### 1. Exhaustion

Arbors argues that Tingle filed two discrimination charges with the OCRC based on age, not retaliation. (ECF No. 18, at 7.) Arbors therefore asserts that this Court does not have subject matter jurisdiction over Tingle's retaliation claim because Tingle failed to file a retaliation claim with the EEOC/OCRC before bringing a Title VII retaliation claim in federal court. (*Id.* at 7.) Tingle disagrees with Arbor's assertion and argues that her two OCRC Intake Questionnaires explicitly mention "retaliation." (ECF No. 24, at 9.) Tingle contends that her retaliation claim was within the scope of her discrimination charge and that her retaliation claim could reasonably be expected to grow out of that original claim. (ECF No. 24, at 9.)

Before a plaintiff can bring a Title VII claim in federal court, a plaintiff must first raise the claim in a discrimination charge filed with the EEOC. *See Hollimon v. Shelby County Gov't*,

325 Fed. Appx. 406, 411 (6th Cir. 2009).  With regard to retaliation claims, the Sixth Circuit has

held that "retaliation claims based on conduct that occurred before the filing of the EEOC charge

must be included in that charge."  *Tisdale v. Federal Exp. Corp.*, 415 F.3d 516, 527 (6th Cir.

2005) (quoting *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001)) (emphasis

omitted).  Although the Sixth Circuit previously held that the requirement to include an

allegation in the EEOC charge was jurisdictional, the Supreme Court decided in *Arbaugh v. Y &*

*H Corp.*, 546 U.S. 500 (2006), that a requirement is jurisdictional only when Congress "clearly

states" that the requirement is to be jurisdictional.  *Hill v. Nicholson*, 383 Fed. Appx. 503, 508

(6th Cir. 2010) (citing *Arbaugh*, 546 U.S. at 515).  In *Hill*, the Sixth Circuit recently concluded

that the requirement that a claim must be presented in an EEOC charge before filing a Title VII

claim in federal court is not jurisdictional.  *Id.* at 508.  Therefore, Arbors's argument that the

Court lacks subject matter jurisdiction must fail.

The Court must now turn to whether Tingle's failure to check the retaliation box in her

EEOC/OCRC complaint constituted a failure to exhaust her administrative remedies. The

purpose of exhausting administrative remedies "is to trigger an investigation, which gives notice

to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation

procedures in an attempt to avoid litigation."  *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir.

2004) (quoting *Davis v. Sodexho Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir.

1998)) (citation omitted).  The exhaustion requirement, however, is not meant to be overly rigid.

*Randolph v. Ohio Dept. of Youth Servs.*, 453 F.3d 726, 732 (6th Cir. 2006) (citing *EEOC v.*

*McCall Printing Co.*, 633 F.2d 1232, 1235 (6th Cir. 1980)).  Therefore, the EEOC/OCRC

complaint should be liberally construed to include all potential claims "reasonably expected to

6

grow out of the charge of discrimination.  *Id.* at 732 (quoting *Haithcock v. Frank*, 958 F.2d 671,

675 (6th Cir. 1992)).  This is known as the expected scope of investigation test and it requires

> a plaintiff to have alleged sufficient facts in his or her EEOC complaint to put the
> EEOC on notice of the other claim even though the plaintiff failed to check the
> appropriate box on the EEOC's complaint form.  *Dixon v. Ashcroft*, 392 F.3d 212,
> 217 (6th Cir. 2004).  Accordingly, "where facts related with respect to the charged
> claim would prompt the EEOC to investigate a different, uncharged claim, the
> plaintiff is not precluded from bringing suit on that claim."  *Weigel v. Baptist Hosp.
> of E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002) (quoting *Davis*, 157 F.3d at 463)
> (internal quotation marks omitted).

*Spengler v. Worthington Cylinders*, 615 F.3d 481, 490 (6th Cir. 2010).

In this instant action, evidence before the Court shows that both of Tingle's

EEOC/OCRC charge forms only indicate that she alleged age discrimination.  Tingle may have

only checked age discrimination in those charge forms, but the EEOC/OCRC was clearly put on

notice that Tingle described a retaliation claim.  In her OCRC Intake Questionnaire, Tingle

stated

> I was suspended 7-23-08 and was reinstated after [an] investigation.  At that time,
> I hired an attorney who had the Class II offense removed and sealed with the
> agreement that it could not be used against me.
> On 3-31-09, that Class offense was counted as the second offense to make the 3-31-
> 09 [offense] #3 which is Termination of employment.

(ECF No. 24-22, at 3.)  Furthermore, the Intake Questionnaire asked Tingle the basis of the

alleged discrimination and she checked retaliation and age.  (ECF No. 24-22, at 2.)  The Court

concludes that Tingle presented sufficient facts in her Intake Questionnaire to put the

EEOC/OCRC on notice of her retaliation claim, even though she did not check the appropriate

box in her EEOC/OCRC charge forms.

## 2. Merits

In Count Three of her Complaint, Tingle asserts a state law retaliatory discharge claim under Ohio Revised Code § 4112.02(I).  That statute provides:

> It shall be an unlawful discriminatory practice:
>
> . . .
>
> (I) For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

Ohio Rev. Code § 4112.02(I).  Tingle then asserts a federal retaliatory discharge claim under 42 U.S.C. § 2000e-3(a) in Count Four.  Under Title VII, it is an unlawful employment practice for an employer "to discriminate against any [employee] with respect to the [employee's] compensation, terms, conditions, or privileges of employment, because of such [employee's] race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  It is considered an unlawful employment practice if an employer discriminates against an employee because "the [employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).  The employee has the burden of proving a *prima facie* case proving that the employer unlawfully retaliated against the employee.[2]

---

[2]  Much of the analysis of the federal and state law claims are duplicative because, as the Sixth Circuit has recognized, the standard for 42 U.S.C. § 2000e-2 and Ohio Revised Code § 4112 are the same.  *Laderach v. U-Haul of Northwestern Ohio*, 207 F.3d 825, 828 (6th Cir. 2000) (citing *Little Forest Medical Center of Akron v. Ohio Civil Rights Comm'n*, 61 Ohio St. 3d 607, 609-10, 575 N.E.2d 1164, 1167 (1991)).

To establish a *prima facie* case of unlawful retaliation under Title VII, the employee must present by a preponderance of evidence that: (1) the employee was engaged in a protected activity; (2) the employer knew that the employee was engaged in this protected activity; (3) the employer subsequently took an employment action adverse to the employee; and (4) a causal connection between the protected activity and the adverse employment action exists. *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003) (citing *Strouss*, 250 F.3d at 342 (6th Cir. 2001); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). The Sixth Circuit has held after the plaintiff has proven the existence of a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Abbott,* 348 F.3d at 542 (citing *Nguyen*, 229 F.3d at 562). If the defendant can meet this burden, then the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the defendant's proffered reason was mere pretext. *Abbott*, 348 F.3d at 542 (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). If the plaintiff demonstrates that the defendant's proffered reasons were pretextual, then the fact finder may infer unlawful retaliation. *Abbott*, 348 F.3d at 542.

Guided by the foregoing standards, this Court turns to the merits of Tingle's claims. Tingle's "opposition" theory of her case is that Arbors retaliated against her for opposing discrimination and a hostile work environment related to her age. She contends that she was engaged in protected activity beginning on August 6, 2008, when her attorney sent a letter to the defendant demanding the 7-24-08 DAR be removed from her personnel file. (ECF No. 24, at 12.) Tingle also argues that she was engaged in protected activity because the letter constituted notice to Arbors that she would file discrimination charges with the EEOC/OCRC if the 7-24-08

9

DAR was not removed.  (*Id.*)  Arbors asserts that Tingle did not engage in a protected activity until April 1, 2009, the day after she was terminated and, therefore, no reasonable fact finder could conclude that Tingle was terminated as a result of engaging in a protected activity.  (ECF No. 18, at 9.)

Section § 2000e-3(a) of Title VII "prohibits an employer from retaliating against an employee who has "opposed" any practice by the employer made unlawful under Title VII; and prohibits an employer from retaliating against an employee who has "participated" in any manner in an investigation under Title VII."  *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000); *see also Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989).  Employees that "participate" in any manner in Title VII proceedings are generally afforded "exceptionally broad protection" under Title VII.  *Booker*, 879 F.2d at 1146.  On the other hand, employees that "oppose" any practice made unlawful by Title VII are generally afforded less protection.  *Id.* at 1146.  To constitute protected activity, a plaintiff is not required to show she engaged in a formal proceedings under Title VII, rather, an informal complaint to an employer is sufficient.  *Weaver v. Ohio State Univ.*, 71 F. Supp. 2d 789, 793 (S.D. Ohio 1998) (citing *E.E.O.C. v. Romeo Cmty. Schs.*, 976 F.2d 985, 989 (6th Cir. 1992)).  An employee that opposes any practice made unlawful by Title VII is protected against employer retaliation if the employee reasonably believes the practice to be a violation of Title VII.  *Johnson*, 215 F.3d at 579; *see also David v. ANA Television Network, Inc.*, Nos. 98-2288, 98-2289, 2000 WL 222575, at *5 (6th Cir. Feb. 16, 2000).  The plaintiff's expression of opposition, however, must concern a violation of the statute for the plaintiff to receive protection under Title VII.  *Monnheimer v. Nielsen*, No. 1:08-cv-356-MRB-TSH, 2010 WL 4688986, at *5 (S.D. Ohio Sept. 27, 2010)

(quoting *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007)).

Two problems undercut Tingle's theory of age-related retaliation. First, Tingle's federal claim is not viable. Second, Tingle has failed to present any direct or indirect evidence of an age-based discriminatory animus underlying Arbor's conduct, which invalidates her purported age-related opposition.

Regardless of whether Tingle has presented evidence that Arbors acted against her because of her age, Title VII does not cover age discrimination. *Clark v. City of Dublin, Ohio*, 178 F. App'x 522, 525 (6th Cir. 2006) ("Courts have explicitly held that Title VII does not cover age or disability discrimination claims." (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 4661 n.4 (1982); *Williamson v. Hartmann Luggage Co.*, 34 F. Supp. 2d 1056, 1063 (M.D. Tenn. 1998)); *Monnheimer*, 2010 WL 4688986, at *5 ("Title VII's anti-discrimination protection does not extend to age discrimination") (citing *Wakefield v. Children's Hosp.*, No. C2-06-1034, 2008 WL 3833798, at *4 (S.D. Ohio Aug. 13, 2008); *Akar v. Prescott Hotel*, No. C 07-4531 SI, 2008 WL 2265184, at *1 n.1 (N.D. Cal. June 2, 2008)). Tingle therefore cannot prevail on her federal claim because there is no predicate protected activity falling within the protections of Title VII.

In contrast to Title VII, § 4112.02 does encompass age. *See* Ohio Rev. Code §§ 4112.02(A) & (I); *Clark*, 178 F. App'x at 525. Tingle's state law retaliation claim also fails, however, because she cannot connect her purported protected activity to the age-based discrimination and hostile work environment she insists existed. Although her previous attorney's demand letter opposed Tingle's suspension for the CPR card incident, this does not mean that the suspension falls within the scope of age discrimination. The demand letter, which requested only that the CPR card incident be removed from Tingle's personnel file, presents no

11

inference of any underlying discrimination, including age discrimination.  It fails to suggest in any way that Tingle reasonably believed that she was engaged in age-related protected activity. *CF. David*, 2000 WL 222575, at *5 (holding that a plaintiff's retaliation claim failed because the plaintiff's threat of legal action did not establish that he reasonably believed that he was opposing acts of discrimination based on national origin).  Tingle has presented no evidence from a reasonable jury could conclude that her age played any part in Arbor's decision to suspend her, discipline her, or terminate her employment (or that she opposed any such age-related impropriety).

Given the lack of a genuine factual dispute over whether a discriminatory animus exists and whether Tingle reasonably believed that she was being retaliated against for her demand letter or filing charges based on age discrimination, this Court must grant summary judgment in favor of Arbors.

### B. Retaliation related to Ohio Revised Code § 3721.24(A)

In Count Three of her Complaint, Tingle claims that Arbors retaliated against her in violation of Revised Code §§ 3721.24(A) and 4112.02(I).  It is arguably unclear whether Tingle seeks to also invoke § 4112.02(I) as encompassing her asserted actions under § 3721.24(A), but the issue is essentially academic given the following merits analysis.[3]

Section 3721.24(A) provides:

---

[3]  Section 4112.02(I) provides that "[i]t shall be an unlawful discriminatory practice:  . . . [f]or any person to discriminate in any manner against any other person . . . because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code."  Ohio Rev. Code § 4112.02(I).

> No person or government entity shall retaliate against an employee . . . who, in good faith, makes a report of suspected abuse or neglect of a resident or misappropriation of the property of a resident; indicates an intention to make such a report; provides information during an investigation of suspected abuse, neglect, or misappropriation conducted by the director of health; or participates in a hearing conducted under section 3721.23 of the Revised Code or in any other administrative or judicial proceedings pertaining to the suspected abuse, neglect, or misappropriation.

Ohio Rev. Code § 3721.24(A). To establish a *prima facie* case of retaliation under § 3721.24(A), Tingle must show that she engaged in a protected activity, that she was the subject of adverse employment action, and that a causal link existed between the protected activity and the adverse action. *Thompson v. Merriman CCRC, Inc.*, No. 23229, 2006 WL 3302508, at *3 (Ohio Ct. App. Nov. 15, 2006) (quoting *Hoeffel v. Henry Cty. Bd. of Commrs.*, No. 7-95-9, 1996 WL 518115, at *3 (Ohio Ct. App. Sept. 16, 1996)). Tingle must therefore show that the activity was protected, that Arbors knew about the activity, and that the alleged retaliation had a causal connection to the protected activity. *Id*.

### 1. Protected Activity

Tingle claims that she engaged in protected activity under Code § 3721.24(A) when she provided information to ODH on July 18, 2008. (ECF No. 24, at 19.) Arbors contends that Tingle was not engaged in protected activity under the statute because she did not initiate the ODH investigation, but instead became a target of inquiry in regard to her CPR card as a result of the investigation.

Section 3721.24(A) provides that "[n]o person or government entity shall retaliate against an employee. . . who, in good faith. . . provides information during an investigation of suspected abuse, neglect, or misappropriation conducted by the director of health . . . ." Ohio Revised

Code § 3721.24(A).  The statute on its face makes no reference to the context in which an employee must provide information during an investigation or whether the employee can become in whole or in part subject to inquiry as a result of the investigation.  This Court need not and will not, however, reach here a definitive interpretation of the statute's scope.  Rather, because it is ultimately a non-dispositive point, the Court assumes for the sake of argument that Tingle's communication with the ODH investigators constituted a protected activity.

### 2.  Adverse Employment Actions

The Court also accepts that Tingle can satisfy the second prong of a *prima facie* case under § 3721.24(A).  She argues that her suspension, the 7-24-08 DAR, the 10-24-08 DAR, and her termination from Arbors constitute adverse employment action.  Arbors apparently does not contest that Tingle's suspension, disciplinary reports, or termination were adverse employment actions.

### 3.  Causal Connection

To meet the third prong of a *prima facie* case, Tingle must present evidence of a causal connection between her protected activity and the adverse employment actions.  *Thompson*, 2006 WL 3302508, at *3.  In describing an essentially analogous inquiry, the Sixth Circuit has explained that

> [t]he . . . burden to establish a *prima facie* case of retaliation "is not onerous." Indeed, it "is a burden easily met."  Further, to establish the element of causal link a plaintiff is required to "proffer evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action.' "  Accordingly, at the *prima facie* stage the burden is minimal, requiring the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence, providing it is credible.

14

*Nguyen v. City of Cleveland*, 229 F.3d 559, 565-66 (6th Cir. 2000) (quoting *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (internal citations omitted)). The Sixth Circuit has also held that " '[a]lthough no one consideration is dispositive, a causal link may be shown through knowledge combined with closeness in time." *Lamer v. Metaldyne Co. LLC*, 240 F. App'x 22, 29 (6th Cir. 2007) (quoting *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.2d 367, 381 (6th Cir. 2002)). Temporal proximity can constitute evidence of a causal connection "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). The employee must couple the fact of temporal proximity with other evidence of retaliatory conduct, however, "[w]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action." *Id.*

Arbors contends that Tingle cannot demonstrate that a causal link existed between the protected activity and the adverse action. Arbors points out that Tingle was terminated eight months after the ODH investigation, which is insufficient to establish a causal link between Tingle's protected activity and the adverse action. Tingle in turn asserts that Arbors retaliated against her by suspending her in July 2008, by issuing the 7-24-08 DAR and the 10-24-08 DAR, and by terminating her. She posits that sufficient temporal proximity existed for all of these adverse employment actions to constitute a causal link.

Temporal proximity exists between Tingle's adverse employment actions and Arbors's knowledge of Tingle's interview with ODH. The record shows that Tingle's suspension occurred immediately after ODH's investigation involving an Arbors's resident's death. (ECF No. 24-2, at 28.) Furthermore, Tingle's 7-24-08 DAR was only seven days after her

conversations with ODH.  (ECF 19, at Ex. G.)  The short time-frame between Tingle's

suspension and 7-24-08 DAR and her protected activity is sufficient to establish a causal link for

*prima facie* case purposes.  *See Goller v. Ohio Dep't of Rehab. & Corr.*, 285 F. App'x 250, 258

(6th Cir. 2008) (holding that two months is sufficient to show a causal link between adverse

employment actions and an employer's knowledge of protected activity).  Although the timing of

10-24-08 DAR presents a close call because it is just over three months from Tingle's protected

activity, this Court assumes for the sake of argument that the temporal proximity is still within a

sufficient time of Arbors's knowledge of Tingle's protected activity.  *See Singfield v. Akron*

*Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (holding that temporal proximity of three

months is significant enough to constitute a causal connection between adverse employment

action and a protected activity).

Additionally, the Court recognizes that even if Tingle's protected activity is not close in

time to her termination, Tingle's deposition testimony would present an issue of fact as to

whether Arbors considered the 7-24-08 DAR as a part of the termination decision.  *See Hill v.*

*Air Tran Airways*, No. 09-4094, 2011 WL 1042178, at *4 (6th Cir. 2011) (holding that if taking

plaintiff's testimony as true that defendant made comments during plaintiff's termination, a

reasonable jury could infer that defendant was acting with a retaliatory motive).  Tingle testified

in her deposition that no documentary evidence exists that Arbors used the 7-24-08 DAR as a

basis for her termination.  Tingle also testified, after much lack of clarity, that Arbors' Tammy

Meyers told her that Arbors used the CPR card discipline (as opposed to a CPR incident in

which Tingle purportedly failed to issue appropriate instructions to another individual) as one

16

determining factor in Tingle's termination.[4]

Tingle's burden at the *prima facie* case stage is minimal and she needs to present only some credible evidence that would enable a reasonable fact finder to infer that a causal connection existed between Tingle's protected activity and Arbors's conduct.  *See Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009) (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) ("The burden of proof at the prima facie stage is 'minimal'; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the protected activity and the retaliatory conduct")).  If Arbors indeed used the sealed 7-24-08 DAR as part of the decisionmaking that led to Tingle's termination, a reasonable juror could infer that a causal connection existed between Tingle's protected activity and her termination.  Necessarily viewing the evidence in the light most favorable to Tingle, the Court concludes that Tingle evades summary judgment on the causal connection component of her *prima facie* case.

### 4. Legitimate Reason

Similar to the Title VII burden shifting standard, once the employee presents a *prima facie* case, the burden shifts to the employer to show that the reason for its conduct was legitimate.  *Hoeffel*, 2006 WL 3305208, at *3 (citing *Neal v. Hamilton Cty.*, 87 Ohio App. 3d 670, 678, 622 N.E.2d 1130, 1136 (Ohio Ct. App. 1993)).  This burden to establish a legitimate, nondiscriminatory reason is "merely a burden of production, not persuasion, and it does not

---

[4]  The Court notes Tingle's lack of precision before she settled on indicating that Meyers indeed referenced the card specifically as opposed to the card incident just "[coming] to [Tingle's] mind" when Meyers referenced a CPR violation.  (ECF No. 19-1, at 48.)  Ultimately, Tingle stated that Meyers referenced the card incident.

involve a credibility assessment." *Upshaw*, 576 F.3d at 589 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).

Arbors has presented evidence that it had legitimate reasons for Tingle's multiple disciplinary issues.  A 6-27-08 DAR pre-dated the CPR card dispute and arose from Tingle's allegedly failing to follow procedures.  The CPR card-related suspension arose because there was uncertainty as to whether Tingle's CPR card's expiration date had been altered.  The related 7-24-08 DAR was in response to Tingle's suspension and alleged alteration.  Tingle's subsequent 10-23-08 DAR arose because she refused to follow a direct order from a supervisor, a Class III offense under Arbors policy.  Finally, the March 2009 incidents involving failure to treat a patient, falsification of medical documents, and failure to abide by safety rules presented two more Class II offenses, qualifying Tingle for three or more offenses within the relevant time period that could and did result in her termination.  Arbors asserts that Tingle was terminated because she received three Class II or higher offenses within the last 12 months, *not including the sealed 7-24-08 DAR*.  In support of this disciplinary scheme, Arbors has submitted its "Employee Handbook," which indicates that an employee can be discharged for committing three Class II offenses within 12 months.  (ECF No. 18-3, at 34.)

Arbors's reasons for Tingle's disciplinary issues present legitimate, nondiscriminatory reasons for the actions against Tingle.  Consequently, the Court must now turn to the question of whether Arbors's proffered reasons are pretextual.

### 5.  Pretext

If an employer can show that the discharge was legitimate, then the burden shifts back to the employee to show that the employer's articulated reason was pretextual.  *Hoeffel*, 2006 WL

18

3305208, at *3. To avoid summary judgment, "the employee must present some evidence that the employer's proffered reason was untrue." *Thompson*, 2006 WL 3302508, at *3 (quoting *Surry v. Cuyahoga Comm. College*, 149 Ohio App. 3d 528, 535, 778 N.E.2d 91, 97 (Ohio Ct. App. 2002)). The Sixth Circuit has held that "[a] plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 434 (6th Cir. 2002) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)) (citation omitted).

Tingles argues that her CPR card's alleged alteration of the expiration date was "patently untrue" and that the other reasons given for her disciplinary reports were "also not true but were instead pretext for the employer's retaliatory animus." (ECF No. 24, at 20.) This appears to fall within the first type of possible pretext in which Arbors reasons would have no basis in fact. The Sixth Circuit has explained that this type of pretext "is easily recognizable and consists of evidence that the proffered bases for the plaintiff's [adverse employment actions] never happened, i.e., that they were 'factually false.' " *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 396 (6th Cir. 2008) (quoting *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

Arbors contends that Tingle cannot present genuine issues of material fact because Arbors has produced record evidence that shows it honestly believed that the discipline and termination was proper. To establish an honest belief, an "employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Mickey*, 516 F.3d at 526. The employee then must demonstrate that the employer did

19

not honestly believe in the proffered nondiscriminatory reason for its adverse employment action. *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 414 (6th Cir. 2008) (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) (citation omitted)). Additionally, the employee is further required to show that there was "more than a dispute over the facts upon which the [adverse actions] must be based." *Braithwaite*, 258 F.3d at 494.

Tingle has failed to present evidence that Arbors did not honestly believe in the perceived facts underlying her numerous discipline actions and eventual termination. Although Tingle disagrees with many of the factual allegations underlying the discipline and even points to some ultimately irrelevant issues such as who found the syringe involved in one incident, she fails to demonstrate that even if it was *factually* incorrect as to what happened, Arbors nonetheless honestly believed in what it *thought* had happened as a result of reasonable investigation and reliance on sources. *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (explaining that if employer that has an honest belief in a proffered nondiscriminatory reason for an adverse employment action, then the plaintiff cannot establish pretext by simply showing the employer was incorrect in holding that belief).

In determining whether Arbors had an honest belief in the proffered basis for each adverse employment action, this Court has examined whether Arbors has established a "reasonable reliance" on the particularized facts available to it in disciplining Tingle. *Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 502-03 (6th Cir. 2007) (citing *Braithwaite*, 258 F.3d at 494). "The critical inquiry is whether [Arbors] made a 'reasonably informed and considered decision.' " *Id.* (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)).  The evidence supports that Arbors acted with such reasonable reliance. For example, the record fails

to puncture that Arbors suspended Tingle because it honestly believed that the expiration date on her CPR card had been altered.  Meyers stated in her affidavit that she contacted the American Heart Association and found out that the normal certification period for a CPR card was two years, not four.  (ECF No. 18-2 ¶ 8.)  The evidence before the Court shows that Arbors's decision to suspend Tingle was thus based on the standard expiration date set by the American Heart Association and on the fact that it appeared someone had altered the card featuring a different date.  The related 7-24-08 DAR targets the alleged alteration, and Arbors presented evidence to show that it honestly believed Tingle's CPR card had been altered.  Although Arbors may have been incorrect in the 7-24-08 DAR and later rescinded that DAR, Tingle cannot establish Arbors's reason as pretextual just because Arbors was factually incorrect.  Tingle has the burden of presenting evidence that Arbors did not honestly believe Tingle's CPR card had been altered, and she has failed to meet that burden.

Similarly, Tingle has failed to show that Arbors did not have an honest belief underlying the remaining DAR's and the fact preceding her termination.  In regard to the 10-23-08 DAR, for example, Tingle only disputed that she was told that she could keep an orientee with her.  A mere dispute as to the facts is insufficient to establish pretext in light of the decisionmaker's honest belief in facts supporting its decision.  *Braithwaite*, 258 F.3d at 494.

Finally, Tingle's argument that Arbors's reasons for her termination were merely pretext also fails.  Within the last twelve months of her employment with Arbors, and not counting the sealed 7-24-08 DAR, Tingle was issued a 6-27-08 DAR (Class II violation), 10-23-08 DAR (Class III violation later lowered to a Class II violation), and a 3-31-09 DAR (two Class II violations).  As previously noted, Arbors's "Employee Handbook" states that three Class II or

higher violations within twelve months is grounds for termination.  (ECF No. 18-3, at 34.)  Even

if Arbors discussed the sealed 7-24-08 DAR as asserted, Arbors still pointed to particularized

facts that support termination because of the 6-27-08, 10-23-08, and 3-31-09 DAR's.  Tingle

may disagree with Arbors's factual conclusions and with its decision to dismiss her, but in only

arguing that they were all untrue, she has failed to present any evidence that Arbors did not

honestly believe its reasons for disciplining and ultimately terminating her.

The uncontroverted evidence therefore indicates that Arbors, reasonably relying on the

numerous particularized facts that were available, made informed and considered decisions that

lack any discriminatory or retaliatory animus.  The facts presented circumstances sufficient to

motivate Arbors to undertake the discipline administered, and there is no basis to conclude that

Arbors acted with any improper motivation.  In the absence of a material dispute over whether

Arbors made reasonably informed and considered decisions that demonstrate honest beliefs in

the proffered reasons for the treatment Tingle received, Arbors is entitled to summary judgment

on Count Three of the Complaint.  *See Braithwaite*, 258 F.3d at 494 ("If there is no material

dispute that the employer made a "reasonably informed and considered decision" that

demonstrates an 'honest belief' in the proffered reason for the adverse employment action, the

case should be dismissed since no reasonable juror could find that the employer's adverse

employment action was pretextual." (quoting *Smith*, 155 F.3d at 807 (internal citation omitted))).

### C.  Punitive Damages

Because Arbors has obtained summary judgment as described above, this Court need not

and does not address the parties' moot contingent arguments regarding the potential availability

of punitive damages.

## IV.  Conclusion

For the foregoing reasons, the Court **GRANTS** Arbors's motion for summary judgment. (ECF No. 18.)  The Clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

_____/s/ Gregory L. Frost_____
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE
